UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 08-11289-TPA |
| CREDITRON FINANCIAL CORPORATION, | : | |
| d/b/a TELATRON MARKETING GROUP, | : | |
| INC. | : | |
|     Debtor. | : | |
| _____ | : | |
| JOHN C. MELARAGNO, | : | |
| CHAPTER 11 TRUSTEE, | : | |
| | : | CHAPTER 11 |
|     Movant, | : | |
| | : | |
|     v. | : | |
| | : | Document No. ____ |
| DOLLAR BANK; UNITED STATES OF | : | |
| AMERICA, INTERNAL REVENUE | : | |
| SERVICE; AND THE COMMONWEALTH | : | |
| OF PENNSYLVANIA, OFFICE OF THE | : | |
| ATTORNEY GENERAL; | : | |
| COLUMBUS DEPOT EQUIPMENT | : | |
| COMPANY; | : | |
| PITNEY BOWES; | : | JUDGE AGRESTI |
| SCHWAB; | : | |
| TELESALES SERVICES, LLC; | : | |
| BANK OF AMERICA; | : | |
| RED TETTEMER & PARTNERS; | : | |
| GE MONEY; | : | |
| STATE FARM BANK; | : | |
| NATIONAL FUEL GAS DISTRIBUTION | : | |
| CORP.; | : | |
| MAVERICK NETWORK SOLUTIONS; | : | |
| MOBILE WARRANTY CORPORATION; | : | |
| OPTIMA DIRECT; | : | |
| SCORE MARKETING; AND | : | |
| TERNIAN INSURANCE GROUP. | : | |
|     Respondents. | : | |
| _____ | : | |

**MOTION FOR ORDER (i) APPROVING SALE OF SUBSTANTIALLY ALL PERSONAL PROPERTY OF THE DEBTOR FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OUTSIDE THE ORDINARY COURSE OF <u>BUSINESS, AND (ii) GRANTING RELATED RELIEF</u>**

John C. Melaragno, Chapter 11 Trustee of the Debtor, Creditron Financial Corporation d/b/a Telatron Marketing Group, Inc. (the "Debtor"), by and through his undersigned counsel, hereby files this *Motion for Order Approving Sale of Substantially all Personal Property of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests Outside the Ordinary Course of Business, and (ii) Granting Related Relief* (the "Motion"). In support of the Motion, the Trustee states as follows:

## INTRODUCTION

1. The Trustee, pursuant to sections 105(a) and 363(f) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves (the "Sale Motion") for entry of an order (the "Sale Order"):

   i. Approving the sale of substantially all of the Debtor's assets (the "Sale") to (a) RDI Marketing Services, Inc. ("Purchaser"), or (b) another Successful Bidder (as defined in the Bidding Procedures Motion (as defined in paragraph 17 below)) submitting the highest and best bid at the Auction in accordance with the procedures set forth in the Bidding Procedures Motion (the "Bidding Procedures"), in either case free and clear of liens, claims and encumbrances. A true and correct copy of the Asset Purchase Agreement entered into by and between the Debtor and the Purchaser is attached hereto as Exhibit "A" (the "Stalking Horse APA"). The assets to be sold (the "Assets") are more fully set forth in the Stalking Horse APA.

   ii. Determining that Purchaser (or other Successful Bidder) is a good faith purchaser entitled to the protections of Bankruptcy Code section 363(m).

   iii. Waiving the 14-day stay of appeal of the Sale Order.

   iv. And, at the closing of the Sale, authorizing the Trustee to retain all net sale proceeds pending further Order of Court.

## JURISDICTION AND VENUE

2. On July 3, 2008 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

3. On December 27, 2010, John C. Melaragno, Esq., was appointed as the Chapter 11 Trustee of The Debtor and continues in the management of its business.

4. The Debtor is a Pennsylvania corporation having a principal place of business at 1545 West 38th Street, Erie, PA 16508.

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Debtor's case and this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## RESPONDENTS

6. Respondent, Dollar Bank, Federal Savings Bank has an address of Corporate Banking, 3 Gateway Center, 11 South, Pittsburg, PA 15222 and is represented by Lawrence C. Bolla, Esq. and Nicholas R. Pagliari, Esq. of the Quinn Law Firm, 2222 West Grandview Blvd., Erie, PA 16507. Debtor is obligated to Dollar bank on two loans as follows:

    a. There is a $1,250,000.00 term loan which was provided to Alfred D. Covatto and Joyce M. Covatto, which term loan is secured by a security interest in three parcels of real property owned by the Covattos. Said loan is also guaranteed by the Debtor which guarantee is secured by a security interest in accounts, chattel paper, documents, equipment, general intangibles, instruments, inventory and proceeds; and

b. A $500,000.00 line of credit loan which was provided to the Debtor, secured by the Debtor's accounts receivable, inventory and equipment, and guaranteed by the shareholders (which guarantee is secured by a security interest in three parcels of real property owned by the Covattos).

7. Respondent, United States of America, Internal Revenue Service ("IRS") has an address of Internal Revenue Service, Insolvency Unit, P.O. Box 628, Pittsburgh, Pennsylvania 15230 and is represented by Edward J. Laubach, Jr., Esquire, Senior Attorney, IRS Chief Counsel, Suite 601, Liberty Center, 1001 Liberty Avenue, Pittsburgh, Pennsylvania. The IRS has filed Proof of Claim No. 1-5 alleging a secured claim in the total amount of $2,013,411.45[1]. Said secured claim is based upon various tax liens filed between November 29, 2005 and March 3, 2008.

8. Respondent, the Commonwealth of Pennsylvania Department of Revenue maintains an address of Bankruptcy Division PA Box 280946, Harrisburg, PA 17128-0946 is represented by T. Lawrence Palmer, Esq. of the Office of the Attorney General of PA, 564 Forbes Avenue, Pittsburgh, PA 15219. The Commonwealth of PA, Department of Revenue had filed Proof of Claim No. 5-1 alleging a secured claim in the total amount of $184,711.80[2]. Said secured claim is based upon various tax liens filed between January 3, 2005 and March 5, 2007.

9. Respondent, Commonwealth of Pennsylvania, Department of Labor & Industry PA Unemployment Fund, filed Proof of Claim No. 3-1 alleging a Priority Claim of $129,064.38 and a general unsecured claim in the amount of $250.00. However, it appears that on November 12, 2002, a tax lien was filed by the PA UC Fund in the

---

[1] The claim of the IRS contains estimated secured tax liability for several years as well as interest and penalty for periods during which no tax appears to be due.

[2] The claim of the PA Department of Revenue contains estimated secured tax liability for several years as well as interest and penalty for periods during which no tax appears to be due.

4

amount of $70,038.56 which should be paid as a secured claim, resulting in a priority claim of $59,025.82 (not $129,064.38).

## PURCHASER

10. The Purchaser has an address of <u>RDI Marketing Services, Inc. 4350 Glendale-Milford Road, Suite 250, Cincinnati, OH 45242.</u>

## PROPOSED SALE

11. The Debtor provides contact center outsourced services including traditional help desk and customer service outsourced solutions.

12. The Trustee determined that, in light of significant indebtedness and claims filed and the Debtor's inability to fund a viable plan and limitations on available funding for operations and the probable value that would be attained were the Assets to be liquidated on a piecemeal basis, the best interests of Debtor's creditors, customers and employees would be served by the going concern sale of the Assets to the bidder making the highest and best offer.

13. The Trustee worked extensively with multiple interested parties and ultimately negotiated the terms of the attached Stalking Horse APA.

14. The Purchaser seeks to acquire the Assets free and clear of liens, claims, interests and encumbrances in accordance with Bankruptcy Code sections 363(b) and (f), together with the possible assumption and assignment of certain of Debtor's executory contracts that may be listed on Schedule 1.1(d) to the Stalking Horse APA (collectively, the "Assumed Contracts," the list of which the Purchaser may modify at any time prior to the hearing on this Sale Motion (the "Sale Hearing")). A separate Motion to Assume and Assign Executory Contracts is being filed contemporaneously with this Sale Motion.

## Purchase Price

15. Pursuant to the terms of the Stalking Horse APA, the Purchaser will purchase the Assets (including the Assumed Contracts) but excluding all cash and accounts receivable[3] for:

 a) Eight Hundred Thousand Dollars ($800,000.00) cash, wire or certified funds at the time of Closing; and

 b) Within ten (10) business days after December 31, 2011 the sum of Six Hundred Thousand Dollars ($600,000.00) if (a) revenue from Bank of America directly relating to the Business during the first full month following the Closing Date through December 31, 2011 has averaged the gross amount billed of at least Six Hundred Thousand Dollars ($600,000.00) per month. The Purchaser shall attempt to fulfill all available Bank of America hours and shall, in good faith, attempt to meet or exceed the $600,000.00 monthly gross billing.

 The Cash Purchase shall be payable to the Debtor in immediately available funds on the Closing Date by certified funds or wire transfer to an account or accounts specified by the Trustee.

## Treatment of Proceeds of Sale of Collateral

16. At the time of closing, all of the net proceeds of sale shall be held by the Trustee pending further Order of Court and further distribution will be made after a final determination is made as to the extent and priority of each of the alleged secured claims.

## RELIEF REQUESTED

17. By this Motion, the Trustee requests, pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code and Bankruptcy Rules 6004 and 9014, that the Court schedule a hearing on this Motion (the "Sale Hearing"), approve the Sale free and clear of all liens, claims, encumbrances and other interests, with any valid and

---

[3] The cash and receivables that exist as of the date of closing shall remain property of the Bankruptcy Estate. It is estimated that the cash and receivables shall amount to approximately $1,000,000.00 at that time.

enforceable liens, claims, interests and encumbrances to attach to the proceeds of the Sale.

## Approval of Sale under Bankruptcy Code Section 363(b)

18. In accordance with Bankruptcy Rule 6004(f)(1), the sale of property outside the ordinary course of business may be by private sale or public auction. The Trustee has determined that the form and manner of the Bankruptcy Sale of the Assets will enable it to obtain the highest or best offer for the Assets, thereby maximizing the value of the estate.

19. By this motion, the Trustee seeks approval of the Sale of the Assets to (a) the Purchaser upon the terms and conditions of the Stalking Horse APA or (b) that Qualifying Bidder designated as the Successful Bidder (as defined in the Bidding Procedures Motion) submitting the highest and best bid for the Assets at the Auction in accordance with the Bidding Procedures, free and clear of liens, claims and encumbrances, under Bankruptcy Code sections 363(b) and (f).

20. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

21. The Court's power to authorize a sale under section 363(b) of the Bankruptcy Code is to be exercised at its discretion, utilizing a flexible, case-by-case approach.[4] The key consideration is the Court's finding that a good business reason exists for the sale.[5]

22. The Trustee requests that the Court authorize the proposed Sale because it reflects sound business judgment. The Assets were extensively marketed to

---

[4] *See In re Baldwin United Corp.*, 43 B.R. 905 (Bankr. S.D. Ohio 1984).
[5] *See Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986).

7

appropriate potential bidders to ensure the highest realizable value in a free-and-clear sale transaction. As such, the Purchase Price represents Debtor's best opportunity to maximize value of the Assets for the benefit of its creditors and the estate. Without approval of the Sale, the Trustee may be forced to shut down and liquidate.

23. Generally, to obtain approval of a proposed sale of assets, the Trustee must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case.[6] In this instance, the Bidding Procedures contemplate that the Assets will be submitted to an auction process to ensure that the best possible price is obtained. An auction is sufficient to establish that one has paid "value" for assets of a bankruptcy estate, where the auction sale has itself been conducted in good faith.[7] Moreover, the opportunity for competitive bidding provides assurance that Debtor is receiving the highest and best offer for the Assets under the circumstances of its chapter 11 case.

### Approval of Sale Free and Clear of Liens, Claims and Encumbrances under Bankruptcy Code section 363(f)

24. The Trustee seeks entry of a Sale Order authorizing the sale of the Assets free and clear of all liens, claims and encumbrances in accordance with section 363(f) of the Bankruptcy Code. Under section 363(f), a trustee may sell property under section 363(b) or (c) "free and clear of any interest in such property of an entity other than the estate" if any of the following conditions are satisfied:

---

[6] *In re Integrated Resources Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y.), *aff'd* 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2nd Cir. 1993); *In re Atlanta Packaging Products, Inc.* 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) (debtor's duty with respect to sales is to obtain the highest price or greatest overall benefit for the estate); *In re Wilson Freight Co.*, 30 B.R. 971, 975 (Bankr. S.D.N.Y. 1983) (debtor's paramount duty in connection with a sale is to obtain the best price).

[7] *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986). Moreover, the Sixth Circuit has indicated that a party would need to show fraud or collusion between the Purchaser, the other bidders and the debtor in order to demonstrate a lack of good faith. *Richards v. Swinebroad and Denton Auctioneers*, No. 84-5896, 1985 WL 13526, at *3 n.2 (6th Cir. July 3, 1985).

i. applicable nonbankruptcy law permits sale of such property free and clear of such interest;

ii. such entity consents;

iii. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

iv. such interest is in bona fide dispute; or

v. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[8]

25. Section 363(f) is satisfied by the proposed sale with respect to the Respondents' liens because such liens, claims, encumbrances or security interests are capable of being satisfied by money, and will attach to the proceeds of the sale of the Assets in the same order of priority as existed on the Petition Date.

### Determination of Purchaser as Good Faith Purchaser
### Pursuant to Bankruptcy Code Section 363(m)

26. When a bankruptcy court authorizes a sale of assets pursuant to section 363(b), it is required to make a finding with respect to the "good faith" of the purchaser.[9] Such a finding is made to facilitate the operation of section 363(m), which provides a safe harbor for purchasers of a debtor's property when the purchase is made in "good faith."

27. The Debtor submits that the Purchaser is a good faith purchaser under section 363(m). The negotiations between the Debtor and the Purchaser were at all times conducted at arms-length and in good faith. The Purchaser is not an insider or affiliate of the Debtor. Moreover, throughout the negotiations, the Trustee has worked diligently to maximize value to this estate. Accordingly, the Trustee respectfully

---

[8] *See* 11 U.S.C. §363(f).

[9] *See Abbots Dairies,* 788 F.2d at 149-50.

requests that the Court enter a finding that the Purchaser is a good faith purchaser under section 363(m).

28. Additionally, the process of marketing and selling the Assets is designed to ensure a good faith sale thereof to any buyer other than Purchaser. The Assets will be further marketed by the Trustee in accordance with the proposed Bidding Procedures. Among other things, the Bidding Procedures provide for a fair auction process (if a bidder other than the Purchaser meets certain financial and other qualifications) that will ensure an arms-length, good faith sale. The Bidding Procedures are designed with the intent of encouraging competitive bidding, thereby maximizing value. Accordingly, the Trustee respectfully requests that, if the Court approves the Sale as requested, it make a determination that the Purchaser, or another Successful Bidder, is a good faith purchaser within the purview of section 363(m) of the Bankruptcy Code.

## **NOTICE**

29. In accordance with Bankruptcy Rule 2002(a)(2), Trustee shall serve notice of this Sale Motion and the Notice of Sale Hearing (the "Sale Notice"), a copy of which is attached hereto as Exhibit "B", on (i) respective counsel for Dollar Bank, the IRS, the Pennsylvania Department of Revenue, Commonwealth of Pennsylvania, Department of Labor & Industry PA Unemployment Fund; (ii) the United States Trustee; (iii) those parties who have appeared and requested service under Bankruptcy Rule 2002; and (iv) all of Debtor's known creditors. Debtor submits that such notice and service are sufficient and adequate.

WHEREFORE, the Trustee respectfully requests entry of a Sale Order:

i. pursuant to Bankruptcy Code sections 363(b) and (f), approving the APA and authorizing the Trustee to sell the Assets to (a) Purchaser upon the

terms and conditions of the APA or (b) the Successful Bidder in accordance with the Bidding Procedures, free and clear of liens, claims and encumbrances;
ii. pursuant to Bankruptcy Code section 363(m), determining that Purchaser or the Successful Bidder is a good faith purchaser entitled to the protections of section 363(m);
iii. pursuant to Bankruptcy Rules 6004(h) and 6006(d), waiving the 14-day stays of appeal of the Sale Order; and
iv. all proceeds of sale shall be held by the Trustee pending further Order of Court.

Dated: 7-11-2011

Respectfully submitted,
MELARAGNO & PLACIDI
BY: /s/ John C. Melaragno
   John C. Melaragno, Esq.,
   502 West Seventh Street
   Erie, PA 16502
   (814) 459-5557
   johnm@mplegal.com
   PA ID 80207
   Chapter 11 Trustee and Attorney Pro Se